******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# PIOTR BUDZISZEWSKI *v.* CONNECTICUT JUDICIAL BRANCH, COURT SUPPORT SERVICES DIVISION, ADULT PROBATION SERVICES
## (AC 41867)

DiPentima, C. J., and Moll and Flynn, Js.*

*Syllabus*

The petitioner, a Polish national, sought a writ of habeas corpus, claiming that his criminal trial counsel, K, had provided ineffective assistance by failing to advise him adequately as to the immigration consequences of his plea of guilty to a certain offense that subjected him to deportation. After the petitioner entered the guilty plea, federal authorities detained him and initiated deportation proceedings against him. The petitioner claimed that, if he had been properly advised by K as to the immigration consequences of entering a guilty plea, he would not have accepted the plea offer. The habeas court rendered judgment denying the habeas petition and granted the petition for certification to appeal, and the petitioner appealed to this court. *Held* that the habeas court properly concluded that the petitioner was not prejudiced by the advice of his attorney, K, regarding the immigration consequences of pleading guilty: although the petitioner highlighted the actions that he took subsequent to accepting the plea offer, including the motions that he had filed contesting his conviction following his guilty plea and the amount of money he spent in avoiding deportation, the petitioner's post hoc assertions on appeal that he would not have pleaded guilty but for K's advice were insufficient to establish prejudice in light of the absence of substantial, contemporaneous evidence to support such assertions, the credibility determinations made by the habeas court regarding the concerns of the petitioner that were contemporaneous to his acceptance of the offer support the conclusion that the court credited K's testimony that the length of incarceration, not deportation, was the petitioner's main concern, and that the petitioner accepted the plea that would ensure that he would spend less than one year in jail, and the court did not credit the petitioner's testimony that he would not have taken the plea deal had he known that he would be deported.

Argued March 12—officially released August 11, 2020

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland, geographical area number nineteen, and tried to the court, *Oliver, J.*; judgment denying the petition, from which the petitioner, on the granting of certification, appealed to this court. *Affirmed.*

*Vishal K. Garg*, for the appellant (petitioner).

*Ronald G. Weller*, senior assistant state's attorney, with whom, on the brief, were *Patrick Griffin*, state's attorney, and *Adrienne Russo*, assistant state's attorney, for the appellee (respondent).

*Opinion*

FLYNN, J. The petitioner, Piotr Budziszewski, appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus. The petitioner claims on appeal that the habeas court improperly rejected his claim that his right to effective assistance of counsel was violated by his criminal trial counsel's failure to properly advise him of the immigration consequences of entering a guilty plea. We disagree and, accordingly, affirm the judgment of the habeas court.

At the center of this case is the effect that federal law has on aliens provided lawful permanent residence in the United States who commit an "aggravated felony." Pursuant to 8 U.S.C. § 1227 (a) (2) (A) (iii), "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." Illicit trafficking in a controlled substance is listed in 8 U.S.C. § 1101 (a) (43) (B) as an "aggravated felony." (Internal quotation marks omitted.) The term "controlled substance" under federal law includes "a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of this subchapter [21 U.S.C. § 812]." (Internal quotation marks omitted.) 21 U.S.C. § 802 (6) (2018). Included in the schedules of 21 U.S.C. § 812 are opium derivatives. The petitioner was arrested for selling Roxicodone, an opium derivative, and entered a guilty plea pursuant to General Statutes (Rev. to 2011) § 21a-277 (a). In *Gousse* v. *Ashcroft*, 339 F.3d 91, 93 (2d Cir. 2003), the United States Court of Appeals for the Second Circuit held that Gousse's conviction under § 21a-277 (a) for selling a "controlled substance" to an undercover police officer constituted a conviction for "illicit trafficking in a controlled substance" under 8 U.S.C. § 1101 (a) (43) (B), which is a removable "aggravated felony" under the Immigration and Nationality Act, 8 U.S.C. § 1101 et seq. (2018). The first habeas court determined, and the second habeas court agreed, that the petitioner's conviction qualified as an aggravated felony under federal immigration law and that no exception or exclusion applied, thus making the petitioner subject to deportation.

At the outset, we note that the United States Supreme Court in "*Padilla* [v. *Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010)] held that before an alien criminal defendant pleads guilty to a criminal offense for which he is subject to deportation, his defense attorney must advise him of the deportation consequences of his plea and resulting conviction. On that score, the Supreme Court concluded that because deportation is such a great, life-altering consequence of a criminal conviction, an alien defendant's plea of guilty to a deportable offense without knowledge of that consequence cannot be considered a knowing and intelligent waiver of his right not to be convicted of that offense unless his guilt is established beyond a reasonable

doubt at a full, fair adversary trial." *Guerra* v. *State*, 150 Conn. App. 68, 72–73, 89 A.3d 1028, cert. denied, 314 Conn. 903, 99 A.3d 1168 (2014).

The following facts and procedural history, as set forth by the habeas court, are relevant. "The petitioner, a Polish national who became a lawful permanent resident of the United States after emigrating here in 2001, was arrested on various drug charges after selling narcotics on two occasions to undercover police officers in January, 2011. The petitioner was charged with two counts of selling narcotics by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b), and two counts of possession of a narcotic substance with intent to sell in violation of General Statutes § 21a-279 (a). The petitioner faced a minimum sentence of five years of incarceration with a maximum term of twenty years. Attorney Gerald Klein represented the petitioner at all relevant times.

"On January 24, 2012, the petitioner entered a guilty plea to one count of possession of a controlled substance with intent to sell in violation of General Statutes [Rev. to 2011] § 21a-277 (a). This offense carried no mandatory minimum period of incarceration. During plea negotiations, the state agreed to a sentence recommendation of five years of incarceration, execution suspended after no more than one year, followed by three years of probation, with the right to argue for less. The court, *Scarpellino, J.*, canvassed the petitioner when he entered his guilty plea . . . .

"On May 2, 2012, the court . . . sentenced the petitioner to five years of incarceration, execution suspended after ninety days, and two years of probation. The petitioner was released from custody after serving forty-five days of incarceration. Thereafter, federal authorities detained the petitioner and began proceedings to remove him from the country. A final order of deportation has been entered against the petitioner, and he has exhausted all appeals from that order.

"The petitioner initiated the present habeas petition on September 11, 2013. In his amended petition, filed on October 28, 2013, the petitioner set forth ineffective assistance of counsel claims as to trial counsel's failure to advocate for the petitioner's admission into a drug treatment program, and failure to adequately research and advise the petitioner of the immigration consequences of his guilty plea as required by *Padilla* v. *Kentucky*, [supra, 559 U.S. 356]. . . . The habeas court, *Newson, J.*, granted the petitioner's petition and ordered that his conviction be vacated. The respondent [the Commissioner of Correction] appealed the decision, and [our] Supreme Court [in *Budziszewski* v. *Commissioner of Correction*, 322 Conn. 504, 518, 142 A.3d 243 (2016)], reversed the habeas court's judgment and remanded the case back to the habeas court for a new trial in which the habeas court must make findings

of fact about what [Attorney] Klein actually told the petitioner and then assess whether, based on those findings, the petitioner has proven that [Attorney] Klein's advice violated the requirements of *Padilla*, as clarified by our [Supreme Court's] decision in [*Budziszewski* v. *Commissioner of Correction*, supra, 504].'' (Footnote omitted; internal quotation marks omitted.)

On remand, the habeas court denied the petition and concluded both that the petitioner had failed to establish that Klein's advice constituted deficient performance and had failed to prove that he was prejudiced by Klein's advice. The court granted the petitioner's petition for certification to appeal. This appeal followed.

We begin with the applicable legal principles. "The [ultimate] conclusions reached by the [habeas] court in its decision [on a] habeas petition are matters of law, subject to plenary review. . . . [When] the legal conclusions of the court are challenged, [the reviewing court] must determine whether they are legally and logically correct . . . and whether they find support in the facts that appear in the record. . . . To the extent that factual findings are challenged, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous. . . . [A] finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . A reviewing court ordinarily will afford deference to those credibility determinations made by the habeas court on the basis of [the] firsthand observation of [a witness'] conduct, demeanor and attitude.'' (Internal quotation marks omitted.) *Noze* v. *Commissioner of Correction*, 177 Conn. App. 874, 885–86, 173 A.3d 525 (2017).

"In *Strickland* v. *Washington*, 466 U.S. 668, [687], 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the United States Supreme Court enunciated the two requirements that must be met before a petitioner is entitled to reversal of a conviction due to ineffective assistance of counsel. First, the [petitioner] must show that counsel's performance was deficient. . . . Second, the [petitioner] must show that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversarial process that renders the result unreliable.'' (Internal quotation marks omitted.) *Santiago* v. *Commissioner of Correction*, 90 Conn. App. 420, 424–25, 876 A.2d 1277, cert. denied, 275 Conn. 930, 883 A.2d 1246 (2005), cert. denied sub nom. *Santiago* v. *Lantz*, 547 U.S. 1007, 126 S. Ct. 1472, 164 L. Ed. 2d 254 (2006).

"To satisfy the prejudice prong, the petitioner had the burden to show that, absent counsel's alleged failure

to advise him in accordance with *Padilla*, he would have rejected the state's plea offer and elected to go to trial. See *Hill* v. *Lockhart*, [474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985)]. In evaluating whether the petitioner had met this burden and evaluating the credibility of the petitioner's assertions that he would have gone to trial, it was appropriate for the court to consider whether a decision to reject the plea bargain would have been rational under the circumstances." (Internal quotation marks omitted.) *Flomo* v. *Commissioner of Correction*, 169 Conn. App. 266, 279–80, 149 A.3d 185 (2016), cert. denied, 324 Conn. 906, 152 A.3d 544 (2017).

On appeal, the petitioner claims that the habeas court improperly concluded that he had not proven either prong of *Strickland*. Because we conclude that the petitioner cannot prevail on his claim that the court improperly concluded that he was not prejudiced by Klein's advice regarding the immigration consequences of pleading guilty, we need not address his claim regarding *Strickland*'s deficiency prong. "It is well settled that [a] reviewing court can find against a petitioner on either ground . . . . [A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Small* v. *Commissioner of Correction*, 286 Conn. 707, 713, 946 A.2d 1203, cert denied sub nom. *Small* v. *Lantz*, 555 U.S. 975, 129 S. Ct. 481, 172 L. Ed. 2d 336 (2008).

We begin our analysis of the petitioner's claim with an overview of *Lee* v. *United States*, U.S. , 137 S. Ct. 1958, 198 L. Ed. 2d 476 (2017). In *Echeverria* v. *Commissioner of Correction*, 193 Conn. App. 1, 218 A.3d 1116, cert. denied, 333 Conn. 947, 219 A.3d 376 (2019), this court summarized *Lee* as follows: "In *Lee*, the defendant, a lawful permanent resident from South Korea, appealed from the denial of his motion to vacate his conviction, claiming that he had received ineffective assistance of counsel due to his defense counsel's failure to advise him of the immigration consequences of his guilty plea pursuant to *Padilla*. . . . It was undisputed that defense counsel deficiently performed because the defendant was erroneously advised that he would not be deported as a result of pleading guilty to possession of ecstasy with intent to distribute, an aggravated felony. . . . As a result, the sole issue on appeal was whether the defendant had been prejudiced by his defense counsel's deficient performance. . . .

"The court recognized that a criminal defendant who faces deportation as a consequence of his or her guilty plea may instead insist on proceeding to trial even if the chances of success are remote because there remains a possibility at trial that the defendant will be acquitted and will not face the onerous punishment of deporta-

tion. . . . Nevertheless, the court emphasized that a post hoc assertion that an individual would not have pleaded guilty but for his or her attorney's deficient performance was not enough to establish prejudice absent contemporaneous evidence to support such an assertion. . . .

"The court determined that the defendant's claim that he would not have accepted the plea agreement had he known that it would lead to deportation was 'backed by substantial and uncontroverted evidence.' [*Lee* v. *United States*, supra, 1969]. The court further explained that '[i]n the unusual circumstances of this case,' the defendant adequately demonstrated a reasonable probability that he would not have pleaded guilty had he known that it would lead to mandatory deportation and that he instead would have proceeded to trial. . . . To support its conclusion, the court stated that there was 'no question' that deportation was the determinative issue in the defendant's decision to enter a guilty plea. . . . The court noted that the defendant repeatedly asked his attorney if there was any risk of deportation, both the defendant and his attorney testified at a hearing on his motion to vacate his conviction that the defendant would have gone to trial had he known about the deportation consequences associated with his guilty plea, and that the defendant, when asked during his plea canvass if the possibility that he could be deported affected his decision to plead guilty, answered in the affirmative and only proceeded to plead guilty once his defense counsel assured him that the judge's question was a 'standard warning. . . .'

"Additionally, the court recognized that the defendant had strong connections to the United States since he had lived in the country for three decades and was caring for his elderly parents, and that the consequences of taking a chance at trial to avoid deportation were not significantly harsher than pleading guilty and facing certain deportation because the defendant faced only a year or two of additional prison time if he went to trial as opposed to pleading guilty. . . .

"The court concluded '[w]e cannot agree that it would be irrational for a defendant in [the defendant's] position to reject the plea offer in favor of trial. But for his attorney's incompetence, [the defendant] would have known that accepting the plea agreement would certainly lead to deportation. Going to trial? Almost certainly. If deportation were the 'determinative issue' for an individual in plea discussions, as it was for [the defendant]; if that individual had strong connections to this country and no other, as did [the defendant]; and if the consequences of taking a chance at trial were not markedly harsher than pleading, as in this case, that [almost certainty of being deported] could make all the difference.' " (Citations omitted; emphasis omitted.) *Echeverria* v. *Commissioner of Correction*, supra, 193

Conn. App. 12–14. We see a critical factual distinction in the petitioner's case from that presented in *Lee*. Unlike in *Lee*, in the present case, the petitioner's trial counsel did not concede that he had improperly advised the petitioner, but did testify that the petitioner was more concerned about going to jail than with deportation. Furthermore, the habeas court found that the petitioner failed to demonstrate that he would have rejected the plea agreement and that he had been prejudiced by Klein's advice.

The petitioner argues that there was a reasonable probability that he would not have accepted the plea offer if he had been properly advised. He contends that he had compelling reasons to avoid deportation because his entire family lives in the United States, he has no family or friends in Poland who would help him rebuild his life there, and he and his mother are the only caregivers for his elderly grandmother. He also contends that the following actions demonstrate his preference to avoid deportation: filing a motion to vacate his guilty plea, filing a petition for a writ of habeas corpus, and spending more than $60,000 to vacate his conviction or otherwise avoid removal.

Although the petitioner highlights the actions that that he took subsequent to his acceptance of the plea offer, the credibility determinations made by the habeas court regarding the concerns of the petitioner that were contemporaneous to his acceptance of the offer support the conclusion that the petitioner has not prevailed under *Strickland*'s prejudice prong. The habeas court made the following relevant credibility determinations. "The record in the present case . . . does not support a finding that deportation was the determinative factor in the petitioner's decision to plead guilty. Attorney Klein testified credibly that length of incarceration was the petitioner's main concern, and that counsel seemed more concerned with potential immigration consequences than the petitioner. Attorney Klein further testified that the petitioner had never been to jail, and the mandatory five year minimum sentence he faced weighed heavily in his decision to accept the plea offer. Attorney Klein further testified that he discussed with the petitioner that the state had a strong case involving the petitioner's sale of narcotics on more than one occasion to undercover police officers. Moreover, the petitioner's own mother testified at the habeas trial that her son was very concerned and stressed about the possibility of going to jail, and that the two discussed it nearly every day.

"The court does not credit the petitioner's testimony that he would have not taken the plea deal had he known he would be deported. The record demonstrates that the petitioner's primary concern was length of incarceration, not deportation. The petitioner accepted a plea deal guaranteeing that he would serve no more

than a year in jail when he was facing a mandatory minimum sentence of five years with a maximum exposure of twenty years of incarceration. There was no evidence presented of an available offer to the petitioner that would have avoided or mitigated the immigration consequences. In light of the foregoing, the decision to reject the plea bargain would not have been rational under the circumstances. The court finds that the petitioner failed to adequately demonstrate a reasonable probability that he would have rejected the plea, and therefore failed to establish that he was prejudiced by counsel's advice."

The habeas court credited Klein's testimony that the length of incarceration, not deportation, was the petitioner's main concern and that he accepted the plea that would ensure that he would spend less than one year in prison.[1] The court did not credit the petitioner's testimony that he would have taken the plea deal had he known he would be deported. We cannot overturn the court's credibility determinations on appeal. "The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony. . . . Appellate courts do not second-guess the trier of fact with respect to credibility." (Citation omitted; internal quotation marks omitted.) *Necaise* v. *Commissioner of Correction*, 112 Conn. App. 817, 825–26, 964 A.2d 562, cert. denied, 292 Conn. 911, 973 A.2d 660 (2009). "It is simply not the role of this court on appeal to second-guess credibility determinations made by the habeas court." *Flomo* v. *Commissioner of Correction*, supra, 169 Conn. App. 280–81.

The petitioner argues in his brief that he has ties to the United States. That, however, is only one factor and is not in itself dispositive. See *Echeverria* v. *Commissioner of Correction*, supra, 193 Conn. App. 17 n.9. The petitioner highlights the motions he filed contesting his conviction following his guilty plea and the amount of money that he spent in avoiding deportation. Because the petitioner's primary concern was prison time, and not deportation, then, according to the rationale of *Lee*, the petitioner's post hoc assertions on appeal that he would not have pleaded guilty but for Klein's advice are insufficient to establish prejudice in light of the absence of substantial, contemporaneous evidence to support such assertions.

The petitioner further argues that the court's analysis of whether he would have pleaded guilty was based largely on its conclusion that Klein's performance in advising the petitioner was not deficient. He contends that if we conclude that the court failed to properly advise the petitioner concerning the immigration consequences of entering a guilty plea, we should remand the case for the habeas court to make a determination on prejudice. We find no merit in this argument. When a habeas court determines that neither prong of *Strick-*

*land* is satisfied, that does not necessarily mean that the analysis of the prejudice prong is intertwined with the analysis regarding deficient performance. Rather, *Strickland* is clear that there are two prongs to an analysis of an ineffective assistance of counsel claim, and subsequent case law, such as *Hill* and *Lee*, set forth the parameters of a prejudice analysis under the circumstances in the present case. The court's prejudice analysis was based properly on this correct law. Furthermore, our case law permits us to decide a case by affirming a court's decision on prejudice without examining the deficiency prong. See, e.g., *Small* v. *Commissioner of Correction*, supra, 286 Conn. 713. "It is well settled that [a] reviewing court can find against a petitioner on either ground, whichever is easier." (Emphasis omitted; internal quotation marks omitted.) Id. "Although a petitioner can succeed only if he satisfies both prongs, a reviewing court can find against a petitioner on either ground." *Breton* v. *Commissioner of Correction*, 325 Conn. 640, 669, 159 A.3d 1112 (2017). Accordingly, because we determined that the habeas court properly concluded that the petitioner has not satisfied *Strickland*'s prejudice prong, our analysis properly may end there.

For the foregoing reasons, we conclude that the habeas court on remand properly determined that the petitioner had not established prejudice. Accordingly, we conclude that the court properly denied the petitioner's petition for a writ of habeas corpus.

The judgment is affirmed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] In addition to the time in jail that the petitioner was facing for the multiple drug charges, some of which were dropped as part of the plea bargain, he was also exposed to additional jail time for larceny in the first degree by virtue of his conviction of the drug felony. As part of the record before the court, Klein testified at the hearing on remand that the petitioner had been charged with larceny in the first degree. The petitioner was granted accelerated rehabilitation for this offense on January 13, 2011, for a period of two years until January 8, 2013. As part of his accelerated rehabilitation, the defendant paid more than $17,000 in restitution. Klein further testified that the petitioner was arrested on the present charges in February, 2011, only a short time after receiving accelerated rehabilitation. Pursuant to General Statutes § 54-56e (f), a defendant who receives accelerated rehabilitation and who satisfactorily completes the period of probation is entitled to a dismissal of the criminal charges. See *State* v. *Jerzy G.*, 183 Conn. App. 757, 767, 193 A.3d 1215, cert. denied, 330 Conn. 932, 194 A.3d 1195 (2018).

Accordingly, a petitioner who commits another felony after having received accelerated rehabilitation risks violating his probation, prosecution being recommenced, and the dismissal of the felony charge for which he was granted accelerated rehabilitation being denied for failure to satisfactorily complete probation pursuant to § 54-56e (f). According to General Statutes § 53a-122 (c), "[l]arceny in the first degree is a class B felony." General Statutes § 53a-35a provides in relevant part that "the sentence of imprisonment shall be a definite sentence and, unless the section of the general statutes that defines or provides the penalty for the crime specifically provides otherwise, the term shall be fixed by the court as follows . . . (6) For a class B felony other than manslaughter in the first degree with a firearm under section 53a-55a, a term not less than one year nor more than twenty years. . . ." According to 8 U.S.C. § 1227 (a) (2) (A) (iii), "[a]ny alien

who is convicted of an aggravated felony at any time after admission is deportable." According to 8 U.S.C. § 1101 (a) (43) (G), the definition of "aggravated felony" includes "a theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment [is] at least one year. . . ." (Footnote omitted; internal quotation marks omitted.)

---